No. 26-369

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

Courtney Gene Jeter,

*Petitioner-Appellant,*

v.

United States of America,

*Respondent-Appellee.*

On Appeal from the United States District Court
for the District of Hawaii
Case Nos. 1:21-cr-00063-DKW-KJM-4 and 1:25-cv-00208-DKW-KJM
The Honorable J. Michael Seabright, U. S. District Judge, Presiding

## APPELLANT'S REQUEST FOR CERTIFICATE OF APPEALABILITY

> LAW OFFICES OF D CRAIG HUGHES
> D. CRAIG HUGHES
> SBOT: 10211025
> 7324 SOUTHWEST FREEWAY
> SUITE 1466
> HOUSTON, TX 77074-2174
> TEL-(713) 535-0683
> EMAIL– dcraighughes@msn.com
>
> Attorney for Movant-Defendant
> Courtney Gene Jeter

# **TABLE OF CONTENTS**

Statement of Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Custody Status. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement of Issues Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

     A.    Procedural Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

     B.    Factual Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

     A.    The COA Standard Is a Threshold Inquiry and This Record Easily Satisfies It. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

     B.    A COA Should Issue on the Investigation / Government-Overreach Ground . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

     C.    A COA Should Issue on the Plea-Stage Ineffective-Assistance Ground . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

     D.    A COA Should Issue on the Sentencing Ineffective-Assistance Ground . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

     E.    A COA Should Issue on the Failure-to-File-a-Requested-Appeal Ground . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## **TABLE OF AUTHORITIES**

**Cases**                                                              **Page**

*Brady v. Maryland*, 373 U.S. 83 (1963). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,14

*Buck v. Davis*, 580 U.S. 100 (2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,13

*Roe v. Flores-Ortega*, 528 U.S. 470 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Garza v. Idaho,* 586 U.S. 232 (2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16,19

*Glover v. United States*, 531 U.S. 198 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Hill v. Lockhart*, 474 U.S. 52 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Iaea v. Sunn*, 800 F.2d 861 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Lafler v. Cooper*, 566 U.S. 156 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Lee v. United States*, 582 U.S. 357 (2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Miller-El v. Cockrell*, 537 U.S. 322 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 5,13

*Missouri v. Frye*, 566 U.S. 134 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Sandoval-Lopez*, 409 F.3d 1193
    (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8, 12, 13, 17, 18, 19, 20

*Slack v. McDaniel*, 529 U.S. 473 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,13

*Strickland v. Washington*, 466 U.S. 668 (1984) . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Wiggins v. Smith,* 539 U.S. 510 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**<u>Statutes and Rules</u>**

18 U.S.C. § 3231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 2253 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 12

28 U.S.C. § 2255 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 3, 5, 6

Fed. R. App. P. 22(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. App. P. 32 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

9th Cir. R. 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## STATEMENT OF JURISDICTION

### A.     Statutory Basis of Subject-Matter Jurisdiction of the District Court

The district court had jurisdiction over the underlying criminal prosecution pursuant to 18 U.S.C. § 3231 and over Mr. Jeter's motion under 28 U.S.C. § 2255(a). Mr. Jeter's § 2255 memorandum raised ineffective-assistance claims involving pretrial investigation, plea advice, sentencing advocacy, and the failure to file a notice of appeal.

### B.     Statutory Basis for Court of Appeals' Jurisdiction

This Court has jurisdiction under 28 U.S.C. §§ 1291 and 2253(a). A certificate of appealability ("COA") is required to appeal the denial of a motion under 28 U.S.C. § 2255. See 28 U.S.C. § 2253(c)(1)(B); Fed. R. App. P. 22(b)(1). Where the district court denies a COA, the applicant may request one from this Court. See Fed. R. App. P. 22(b)(1); 9th Cir. R. 22-1.

### C.     Timeliness

The district court denied Mr. Jeter's § 2255 motion in two stages. In its September 30, 2025 order, it denied four ineffective-assistance claims, while reserving the failure-to-file-a-notice-of-appeal claim for an evidentiary hearing. In its December 4, 2025, final order, entered after the December 3, 2025, evidentiary hearing, it denied the remaining claim and denied a COA as to all claims as well.

**D.     Appealability**

The December 4, 2025, final order denying the remaining § 2255 ground is a final appealable order. The September 30, 2025, order is reviewable as part of that final judgment and contains the district court's denial of a COA as to the four earlier-dismissed claims.

## STATEMENT OF CUSTODY STATUS

Mr. Jeter is in federal custody serving the sentence imposed in the District of Hawaii.

## STATEMENT OF ISSUES PRESENTED

A.     Whether reasonable jurists could debate the district court's rejection of Mr. Jeter's claim that pretrial counsel rendered ineffective assistance by failing to investigate Jeff Lynch, Lamont Tellis, the asserted substitution of "Oscar" in discovery materials, and related entrapment, *Brady/Giglio*, and government-overreach theories.

B.     Whether reasonable jurists could debate the district court's rejection of Mr. Jeter's claim that counsel failed to communicate adequately, failed to explain the full range of punishment and sentencing exposure, and thereby rendered constitutionally deficient plea advice.

2

C. Whether reasonable jurists could debate the district court's rejection of Mr. Jeter's claim that sentencing counsel failed to review and explain the Presentence Investigation Report adequately, failed to file substantive objections, and failed to provide constitutionally adequate mitigation and sentencing advocacy.

D. Whether reasonable jurists could debate the district court's denial, after evidentiary hearing, of Mr. Jeter's claim that Gary Singh rendered ineffective assistance by failing to file a notice of appeal after being instructed to do so.

## INTRODUCTION

This appeal arises from a two-stage denial of Mr. Jeter's motion under 28 U.S.C. § 2255. In the first stage, the district court rejected four ineffective-assistance claims on the written record and denied a COA as to those claims. In the second stage, the court held that the remaining failure-to-file-a-notice-of-appeal claim could not be summarily rejected because the record contained "specific but conflicting evidence" as to whether Mr. Jeter instructed counsel to appeal, and it therefore ordered an evidentiary hearing under *United States v. Sandoval-Lopez*, 409 F.3d 1193, 1198 (9th Cir. 2005). Only after that hearing did the court deny the final claim and deny a COA on that ground as well.

That procedural history matters. The governing COA standard is intentionally modest. A COA should issue when the applicant makes a substantial showing of the

3

denial of a constitutional right, meaning only that reasonable jurists could debate the district court's resolution or conclude that the issues deserve encouragement to proceed further. See *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Supreme Court has repeatedly cautioned that the COA inquiry is a threshold inquiry, not a disguised merits determination. See *Miller-El v. Cockrell*, 537 U.S. 322, 336–38 (2003); *Buck v. Davis*, 580 U.S. 100, 115–17 (2017). The district court itself acknowledged that, in the Ninth Circuit, the COA standard is "lenient."

Mr. Jeter's case clears that threshold. On the first three categories of claims, he identified concrete failures in investigation, plea advice, PSR review, objections, and sentencing advocacy. On the fourth, the district court itself found the evidence close enough to require a live hearing. And the hearing record did not erase debatability; it sharpened it. Andrea Jeter testified that Singh said he could appeal, that he had fourteen days, and that he needed the sentencing transcript first; the record then showed that Singh's office ordered the transcript and billed Andrea for it; Mr. Jeter testified that he repeatedly said he was "definitely appealing"; and Singh denied any request. Most important, Singh's fallback explanation for ordering the transcript—that Mr. Jeter wanted to reread his remarks so he could apologize—was materially weakened by the chronology. The apology letters had already been prepared and provided before the transcript was transcribed. That contradiction

directly weakens Singh's credibility and makes the district court's choice to credit him over Andrea and Mr. Jeter at least debatable.

At minimum, these issues deserve encouragement to proceed further.

## STATEMENT OF THE CASE

### A.    Procedural Background

On October 7, 2021, a federal grand jury returned a ten-count indictment charging Courtney Gene Jeter and two others in a drug-trafficking conspiracy and related offenses. See Gov't Answer, ECF No. 171 at PageID.1388–89. Mr. Jeter was initially represented by William A. Harrison, then by Myles S. Breiner, and later by Gary G. Singh. *Id.* at PageID.1389–90.

Mr. Jeter ultimately pleaded guilty pursuant to a written Memorandum of Plea Agreement to three counts: Count One, conspiracy to distribute and possess with intent to distribute controlled substances; Count Eight, possession of a firearm in furtherance of a drug-trafficking crime; and Count Ten, money laundering. See Order Denying in Part § 2255 Motion, ECF No. 178 at PageID.1622–23; see also, Plea Agreement, ECF No. 89. The plea agreement included appeal and collateral-attack waivers, but expressly preserved ineffective-assistance claims, and the Government agreed not to file an information under 21 U.S.C. § 851. See ECF No. 89 at PageID.375–76 ¶ 13, PageID.366, 377–78.

5

On May 13, 2024, the district court sentenced Mr. Jeter to a total term of 240 months' imprisonment—180 months on Counts One and Ten, concurrent, plus 60 months on Count Eight, consecutive—followed by five years of supervised release. See Gov't Answer, ECF No. 171 at PageID.1403–04; see also, Judgment, ECF No. 158. Judgment was entered on May 14, 2024. See ECF No. 171 at PageID.1404. No notice of appeal was filed. *Id.*

On May 21, 2025, Mr. Jeter, through retained *pro hac vice* counsel D. Craig Hughes, filed his motion under 28 U.S.C. § 2255 and supporting memorandum. See ECF Nos. 166, 166-1; ECF No. 171 at PageID.1404. The motion asserted ineffective-assistance claims spanning pretrial investigation, plea advice, sentencing advocacy, and the failure to file a notice of appeal. See ECF No. 178 at PageID.1622–23.

The Government filed its answer on July 1, 2025, along with declarations from Myles Breiner and Gary Singh. See ECF No. 171; ECF No. 171-1; ECF No. 171-2. Mr. Jeter filed a reply on August 22, 2025, and later submitted Andrea Jeter's declaration and related exhibits concerning the appeal issue.See ECF No. 175; ECF No. 177-1.

In its September 30, 2025, order, the district court denied Mr. Jeter's § 2255 motion as to all grounds except the claim that sentencing counsel was ineffective for

6

failing to file a notice of appeal after being asked to do so. See ECF No. 178 at PageID.1622–23, 1671–72. The court also denied a certificate of appealability as to the four dismissed grounds. *Id.* at PageID.1670–72. As to the remaining appeal claim, the court held that there was "specific but conflicting evidence" and, guided by *United States v. Sandoval-Lopez*, 409 F.3d 1193 (9th Cir. 2005), directed further proceedings. *Id.* at PageID.1667–70.

The district court conducted an evidentiary hearing on December 3, 2025, limited to whether Mr. Jeter instructed Gary Singh to file a notice of appeal. See Final Order, Civ. ECF No. 6 at PageID.942–43. On December 4, 2025, the court entered its final order denying relief on that remaining ground and denying a certificate of appealability as to that claim as well. *Id.* at PageID.953–54. The court explained that, based on the hearing testimony and the witnesses' demeanor, it found Singh credible that he had not been told to file a notice of appeal. *Id.* at PageID.953.

Accordingly, Mr. Jeter now seeks a COA on the four ineffective-assistance grounds denied in the September 30, 2025, order, and on the failure-to-file-a-notice-of-appeal ground denied in the December 4, 2025, final order.

B. **Factual Background**

Mr. Jeter consistently maintained that other individuals—particularly Jeff Lynch and Lamont Tellis—played central roles in the conduct underlying his conviction. He asserted that pretrial counsel failed to investigate those individuals despite repeated requests and failed to pursue defenses grounded in those facts, including entrapment and government-overreach theories. He further asserted that counsel failed to confront what he viewed as the Government's misleading attribution of key conduct to "Oscar," rather than to the individuals Mr. Jeter identified.

Mr. Jeter also asserted that counsel failed to explain the true range of punishment and sentencing exposure before the plea, and later failed at sentencing to review and explain the PSR adequately, to object to aggravating facts and enhancements, and to present constitutionally adequate mitigation.

The central factual dispute, however, concerns what occurred after sentencing. Andrea Jeter testified that immediately after sentencing Singh said he "can appeal," that he had fourteen days, and that he needed the sentencing transcript first. She further testified that Singh said his office would invoice her for that transcript, and the documentary proof matched that account in material part: his office later followed up on a transcript request submitted on May 21, 2024, and billed Andrea $201.05, which she paid. Mr. Jeter testified that after he reached Lompoc he asked his wife to

8

check on the appeal, that he was told only the transcript had been ordered, that he did not understand why a transcript had been ordered if Singh said he would appeal, and that he had told counsel, "I'm definitely appealing," "countless" times within the 14-day period. See Evid. Hr'g Tr. 18:18–25:25, 82:1–83:6.

Singh denied that any request to appeal was made. He denied any appeal discussion with Andrea after sentencing and testified that, during a May 15th meeting, Mr. Jeter gave him apology letters, said he did not remember what he had said in court, and therefore wanted the transcript so he could "go back" and understand what had happened. See Evid. Hr'g Tr. 123:1–124:25.

That fallback explanation is materially weakened by the chronology established at the hearing. Attorney Hughes emphasized that the apology letters had already been prepared the day after sentencing, before the transcript was transcribed, and argued that the ordering of the transcript was therefore better understood as corroborating steps toward an appeal than as a prerequisite to apology. See Evid. Hr'g Tr. 177:1–178:25. The district court acknowledged that the apology-letter chronology made Singh's explanation "sound[] strange," yet concluded that "as between the two odd explanations," Singh's "sits most comfortably." See Evid. Hr'g Tr. 196:1–197:25.

That chronology does not automatically disprove Singh's account. But it does substantially weaken the alternative explanation the district court relied upon to credit him over Andrea and Mr. Jeter.

## SUMMARY OF ARGUMENT

A COA should issue on all four issues.

The investigation-related claim deserves review because Mr. Jeter alleged specific facts showing that counsel ignored his insistence that Jeff Lynch and Lamont Tellis were central actors, failed to investigate those individuals, and failed to confront what he described as the Government's misleading attribution of conduct to "Oscar." The district court rejected that theory, but reasonable jurists could debate whether it resolved too much on the papers in a case where Mr. Jeter identified named individuals, specific discovery concerns, and a concrete theory of how better investigation would have affected both trial posture and plea advice.

The plea-stage claim deserves review because Mr. Jeter's theory was not simply that he later regretted pleading guilty. It was that counsel failed to explain the true range of punishment and the effect of role and firearm allegations on his sentencing exposure, which undermined the voluntariness and intelligence of the plea decision. The Government and district court relied heavily on the plea colloquy, but reasonable jurists could debate whether a standard Rule 11 exchange conclusively

10

foreclosed the specific Sixth Amendment failures Mr. Jeter alleged.

The sentencing-stage claim deserves review because Mr. Jeter specifically alleged that counsel failed to review and explain the PSR, failed to object to enhancements and aggravating facts, and failed to challenge the narrative that made him the undisputed organizer while others escaped scrutiny. The district court rejected those claims, but reasonable jurists could debate whether the absence of objections reflected reasonable strategy or deficient performance.

The failure-to-appeal claim most plainly warrants a COA. The district court itself found "specific but conflicting evidence" and ordered a hearing under *Sandoval-Lopez*. At that hearing, Andrea Jeter testified that Singh said he could appeal and needed the transcript first; documentary evidence showed that a transcript was ordered during the appeal period and that Andrea was billed for it; Mr. Jeter testified that he told Singh he was appealing; and Singh denied any appeal request. The district court credited Singh. But the record also showed that Singh's fallback explanation for ordering the transcript—that Mr. Jeter needed it to recall his remarks and apologize—was seriously weakened by the chronology, because the apology letters had already been written and provided before the transcript was produced. At the COA stage, that is more than enough to make the issue debatable.

## **ARGUMENT**

### **A.   The COA Standard Is Low, and this Record Satisfies It.**

A COA may issue when the applicant makes a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2). That standard is satisfied when reasonable jurists could debate the district court's resolution of the constitutional claims or conclude that the issues deserve encouragement to proceed further. See *Slack*, 529 U.S. at 484. The Supreme Court has repeatedly emphasized that the COA inquiry is a threshold inquiry, not a full merits adjudication. See *Miller-El*, 537 U.S. at 336–38; *Buck*, 580 U.S. at 115–17.

That principle is especially important here because the district court itself recognized the closeness of at least one claim. In the September 30, 2025, order, it expressly held that the failure-to-file-a-notice-of-appeal claim could not be resolved on the written record because there was "specific but conflicting evidence" on whether Mr. Jeter instructed Singh to appeal. It therefore followed *Sandoval-Lopez* and directed a dedicated evidentiary hearing. A claim substantial enough to require a *Sandoval-Lopez* hearing is, at minimum, a claim on which reasonable jurists could disagree.

The same logic applies to the remaining claims. The district court rejected them, but that is not the same as showing they are beyond debate. Mr. Jeter did not

present vague complaints; he identified specific failures in investigation, plea advice, PSR review, objections, and mitigation advocacy. At the COA stage, that is enough.

## B. A COA Should Issue on the Investigation and Government-Overreach Ground.

Mr. Jeter's investigation claim was concrete. In his memorandum and reply, he asserted that he informed pretrial counsel that Jeff Lynch and Lamont Tellis played central roles in supplying drugs, orchestrating shipments, and directing financial transactions. He asserted that he asked counsel to investigate those individuals and even offered to pay for a private investigator. He further argued that the Government's attempt to attribute a key supplier role to "Oscar" was implausible because of the language mismatch and because discovery materials, in his view, showed Lynch directing the money drops. He tied those facts to a theory that the substitution of "Oscar" for "Lynch" in DEA-6 materials masked the true structure of the conspiracy and supported entrapment, Brady, and government-overreach arguments.

Reasonable jurists could debate the district court's rejection of that claim. The court was entitled to view the Government's evidence and the plea agreement as powerful, but Mr. Jeter's position was not simply that counsel should have "investigated more." He named the witnesses, identified the discrepancy, and

13

connected the missing investigation to a specific defense theory. At the plea stage, counsel's duty is not merely to absorb the Government's version of events; it is to investigate enough to render informed advice. See *Strickland v. Washington*, 466 U.S. 668, 690–91 (1984); *Hill v. Lockhart*, 474 U.S. 52, 56–59 (1985); *Wiggins v. Smith*, 539 U.S. 510, 521–23 (2003). Whether Mr. Jeter would ultimately prevail is not the question now. The question is whether reasonable jurists could debate whether counsel's investigation was constitutionally adequate in light of the specific facts he identified. They could.

### C. A COA Should Issue on the Plea-Stage Ineffective-assistance Ground.

Mr. Jeter's plea-stage claim likewise deserves review. His theory was that counsel failed to explain the full range of punishment and failed to advise him properly about how the role and firearm allegations would affect his sentencing exposure. In his reply, he expressly argued that counsel must explain the full range of possible punishment and that he would not have pleaded guilty had he understood his true exposure.

The district court rejected that argument, and the Government predictably pointed to the plea colloquy and written plea agreement. But reasonable jurists could debate whether the colloquy was dispositive of the precise Sixth Amendment claim

14

Mr. Jeter raised. A plea colloquy is powerful evidence, but it does not automatically bar a claim that the plea itself was induced by constitutionally deficient advice. See *Lee v. United States*, 582 U.S. 357, 364–69 (2017); *Lafler v. Cooper*, 566 U.S. 156, 162–68 (2012); *Missouri v. Frye*, 566 U.S. 134, 145–47 (2012); *Iaea v. Sunn*, 800 F.2d 861, 865 (9th Cir. 1986). Here, Mr. Jeter did not merely allege post-sentence regret. He alleged that he was not adequately informed about the true stakes of the plea. That claim is at least debatable.

### D. A COA Should Issue on the Sentencing Ineffective-assistance Ground.

The sentencing claim also deserves encouragement to proceed further. Mr. Jeter alleged that Singh failed to review and explain the PSR, failed to object to drug quantity and role-related aggravating facts, and failed to challenge the narrative that made him the undisputed organizer while others escaped scrutiny. He argued that those omissions directly increased his sentence.

The district court rejected those arguments, but reasonable jurists could debate whether the absence of objections shows reasonable strategy or deficient performance. Ineffective assistance at sentencing is a classic Strickland claim, and even a modest increase in imprisonment can establish prejudice. See *Glover v. United States*, 531 U.S. 198, 203–04 (2001). Here, Mr. Jeter's theory was not fanciful. It was

15

that counsel accepted the Government's aggravating narrative without adversarial testing and without adequately explaining the PSR. Whether that claim ultimately succeeds is not the COA question. Whether it is debatable is. Here, it is.

### E. A COA Should Issue on the Failure-to-file-a-Requested-Appeal Ground.

This is the strongest issue in the case.

The governing law is straightforward. If a defendant expressly instructs counsel to file a notice of appeal and counsel fails to do so, counsel performs deficiently and prejudice is presumed because the defendant loses the appellate proceeding itself. See *Roe v. Flores-Ortega*, 528 U.S. 470, 477, 484 (2000). That rule applies even where the defendant signed an appeal waiver. See *Garza v. Idaho*, 586 U.S. 232, 241–44 (2019). And the Ninth Circuit has squarely held that if a defendant, even one who waived appeal, says he wants to appeal, counsel must file the notice. See *Sandoval-Lopez*, 409 F.3d at 1197–99.

The district court recognized all of that. Before the hearing, it found "specific but conflicting evidence" on whether Mr. Jeter instructed Singh to appeal. It cited Andrea Jeter's declaration that Singh told her immediately after sentencing that he would obtain the transcript and file an appeal within fourteen days, and it contrasted that with Singh's declaration denying any request. That conflict was serious enough

16

that the court ordered a *Sandoval-Lopez* hearing rather than deny the claim summarily.

The hearing record remained close. Andrea testified that immediately after sentencing Singh said he could appeal, that he had fourteen days, and that he needed the transcript first. Mr. Jeter testified that after he got to Lompoc he asked his wife to check on the appeal, that he was told only the transcript had been ordered, that he did not understand that because Singh said he would appeal, and that he had told counsel, "I'm definitely appealing," "countless" times within the appeal period. See Evid. Hr'g Tr. 18:18–25:25, 82:1–83:6. The documentary proof matched Andrea's account in material part: Singh's office followed up on a transcript request submitted on May 21, 2024, and billed Andrea for it. *Id.* 23:1–25:25.

Singh, by contrast, denied any discussion of an appeal with Andrea, denied any request from Mr. Jeter, and testified that the transcript was ordered because Mr. Jeter wanted to remember what he had said during the sentencing outburst so he could apologize to the Court and move on. See Evid. Hr'g Tr. 123:1–124:25.

That fallback explanation is where the district court's credibility finding becomes debatable. Attorney Hughes emphasized that the apology letters had already been prepared the day after sentencing and provided before the transcript was transcribed, and argued that the transcript order was more consistent with appellate

17

activity than with an apology already undertaken. See Evid. Hr'g Tr. 177:1–178:25. The district court acknowledged that this chronology made Singh's explanation "sound[] strange," yet still concluded that, "as between the two odd explanations," Singh's "sits most comfortably." See Evid. Hr'g Tr. 196:1–197:25.

That point matters because the district court itself recognized the weakness in Singh's fallback explanation. If the apology letters had already been prepared and filed before the transcript existed, then Singh's explanation that the transcript was ordered so Mr. Jeter could review his remarks and prepare an apology loses much of its force. The chronology does not prove Singh lied, but it materially weakens the alternative rationale the district court relied upon to credit him over Andrea and Mr. Jeter.

The district court also stressed that a transcript is not required to file a notice of appeal. That is true, but it does not resolve the claim. The question under *Flores-Ortega* and *Sandoval-Lopez* is not whether Singh's explanation of appellate mechanics was legally correct. It is whether Mr. Jeter instructed him to appeal or otherwise made clear that he wanted to appeal. Andrea expressly testified that she did not understand court procedure and simply accepted Singh's explanation. See Evid. Hr'g Tr. 196:1–196:25. A lay client's misunderstanding that counsel needed a transcript to "start the appeal" is hardly implausible. Nor does the existence of an

18

appeal waiver make the request irrational in a way that defeats the claim, because *Garza* and *Sandoval-Lopez* make clear that if the request was made, counsel had to file regardless.

In the end, this was not a one-sided record. The district court was entitled to credit Singh, but the question now is whether reasonable jurists could debate that choice. Given the court's own pre-hearing finding of "specific but conflicting evidence," Andrea's corroborating testimony, the transcript order and billing, and the substantial weakness in Singh's fallback apology-letter explanation, the answer is yes.

## CONCLUSION

For these reasons, Courtney Gene Jeter respectfully requests that this Court issue a COA on all four issues presented above, or at minimum on the following core issues: whether reasonable jurists could debate the district court's rejection of his investigation, plea-stage, and sentencing-stage ineffective-assistance claims, and whether reasonable jurists could debate the district court's denial, after evidentiary hearing, of his claim that counsel failed to file a notice of appeal after being instructed to do so.

Respectfully submitted,

Dated: April 9, 2026 /s/ D. Craig Hughes
D. Craig Hughes
Counsel for Petitioner-Appellant
Courtney Gene Jeter

## CERTIFICATE OF COMPLIANCE FOR BRIEFS

I am the attorney for petitioner-appellant Courtney Gene Jeter.

This brief contains **3964** words, excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief complies with the word limit of the applicable Federal Rules of Appellate Procedure and Ninth Circuit Rules.

Dated: April 9, 2026 /s/ D. Craig Hughes
D. Craig Hughes

## CERTIFICATE OF SERVICE

I, D. Craig Hughes, hereby certify that I electronically submitted the foregoing Appellant's Request for Certificate of Appealability to the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the Court's electronic filing system on April 9, 2026.

I further certify that all participants in the case are registered electronic filing users and that service will be accomplished by the Court's electronic filing system.

Dated: April 9, 2026 /s/ D. Craig Hughes
D. Craig Hughes

20